**SEALED**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, et al.      No. 2:10-CV-1273 KJM EFB
*ex rel.* MAX BENNETT, RELATOR,

           Plaintiffs,

                            ORDER

         v.

BIOTRONIK, INC., et al.,

           Defendants.

On July 10, 2014, the court heard argument on defendant Biotronik's motion to maintain the seal on the complaint; the United States has opposed the motion. The court also heard argument on the United States' request to maintain the seal on its requests for extensions of time to determine whether to intervene. Christopher Myers and John Irving appeared for Biotronik, Inc.; McGregor Scott appeared for Western Medical, Inc.; Adam Schwartz and Kelli Taylor appeared for the United States; Peter Chatfield appeared telephonically for relator Max Bennett.

I. BACKGROUND

In a Third Amended Complaint (TAC) filed December 20, 2011, relator Max Bennett alleged that defendant Biotronik sells cardiac rhythm management devices, including pacemakers and implantable cardiac defibrillators, which are covered under the Medicare program as prosthetic devices. TAC, ECF No. 41 ¶¶ 19-21. Physicians prescribe these devices,

1

1  which are then purchased by the hospitals for surgical implantation. *Id*. ¶¶ 22-23.  Hospitals and

2  physicians are reimbursed separately for their services.  *Id*.

3       Biotronik and its sales associate Western Medical allegedly began to offer

4  financial inducements such as sham consulting agreements, dinners, travel and participation in

5  clinical studies, to persuade physicians to recommend Biotronik products.  *Id*. ¶¶ 30, 68, 76-102.

6  The physician defendants solicited and accepted remuneration from Biotronik for referring others

7  to Biotronik and arranging for the purchase of Biotronik products. *Id*. ¶ 69.  Biotronik paid

8  inducements to independent sales representatives to refer and recommend Biotronik's products.

9  *Id*. ¶¶ 103-108.  In addition, Biotronik submitted claims for defective products.  *Id*. ¶ 109.

10       Relator began working for Biotronik in 2004 and by 2010, he had been promoted

11  to Regional Sales Director for the Northwest Sales Region.  *Id*. ¶ 3.  He began to question

12  Biotronik's tactics and was eventually terminated. *Id*. ¶¶ 70-74.

13       The Third Amended Complaint includes thirty-one claims:  two False Claims Act

14  violations, 31 U.S.C. § 3729(a)(1), (a)(2), & (a)(3), and violations of various state false claims

15  statutes.

16       Since the case was filed, the government sought a number of extensions of time to

17  decide whether to intervene.  ECF Nos. 16, 25, 35, 42, 46, 48, 51, 54.  On April 4, 2014, the court

18  denied the last request and ordered the seal lifted within twenty-one days of the date of the order.

19  ECF No. 58.

20       On April 30, 2014, the relator filed a notice of voluntary dismissal; the government

21  and the State of California concurred.  ECF Nos. 59-61.

22       On May 23, 2014, the case was unsealed in accordance with the court's April 4

23  order and on May 29, 2014, the court dismissed the action.

24       On June 2, 2014, Biotronik filed an ex parte request for the temporary resealing,

25  which the court granted.  ECF Nos. 65, 71.  It filed the instant motion to seal on June 13, 2014.

26  ECF No. 76.  The government has opposed and the State of California has joined the opposition.

27  ECF Nos. 81, 82.  The relator has also opposed.  ECF No. 83.

28  /////

II.  ANALYSIS

Title 31 of the United States Code section 3730 authorizes a private person to bring an action for violations of the False Claims Act and to file it *in camera*, with the seal to remain in effect for at least sixty days and thereafter, should the government seek extensions of time in which to investigate and decide whether to intervene in the action.  31 U.S.C. § 3730(b)(1)-(3).[1]  These sealing provisions "strike a balance between the purposes of *qui tam* actions [and] . . . law enforcement needs [.]"  *United States ex rel. Lujan v. Hughes Aircraft Co*. 67 F.3d 242, 245 (9th Cir. 1995 ) (internal quotations omitted).  If the government elects not to intervene, "the relator must unseal the complaint and serve the putative defendants.  The case then proceeds as any other civil action."  *United States ex rel. Aflatooni v. Kitsap Physicians Serv*. 314 F.3d 995, 998 n.2 (9th Cir. 2002); *see also Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011) (stating that if the court declines to extend the seal on the government's request, the complaint and the government's extension requests are unsealed and if the government intervenes, the case is unsealed).

"[T]he district court presiding over a given *qui tam* action 'has the authority to unseal the documents filed before the government intervene[s] in [a] *qui tam* case and 'has wide

---

[1] This subsection of the statute reads as follows:

(b) Actions by private persons.--(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. [footnote omitted] The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

1    discretion in how to determine what documents, if any should remain under seal, and how to

2    make that determination.'"  *United States ex rel. Smart v. CHRISTUS Health*, Civil Action

3    No  2:05–CV–287, 2013 WL 2289883, at *5 (S.D. Tex. May 22, 2013) (quoting *United States*

4    *ex rel. Becker v. Tools & Metals, Inc*., Civil Action Nos. 3:05-CV-0627-L, 3:05-CV-2301-L,

5    2008 WL 3850522, at *2 (N.D. Tex. Aug. 19, 2008)), *aff'd*. 563 F. App'x 314 (5th Cir. 2014).

6              In the Ninth Circuit, there is a presumption in favor of public access to court

7    records.  *See Phillips v. Gen. Motors Corp*., 307 F.3d 1206, 1210 (9th Cir. 2002).  However,

8    "access to judicial records is not absolute."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d

9    1172, 1178 (9th Cir. 2006). "[I]f the court decides to seal certain judicial records [after

10   conscientiously balancing the competing interests of the public and the party who seeks to keep

11   certain judicial records secret], it must 'base its decision on a compelling reason and articulate the

12   factual basis for its ruling, without relying on hypothesis or conjecture.' " *Id.* at 1179 (quoting

13   *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). "In general, 'compelling reasons'

14   sufficient to outweigh the public's interest in disclosure and justify sealing court records exist

15   when such 'court files might become a vehicle for improper purposes,' such as the use of records

16   to gratify private spite, promote public scandal, circulate libelous statements, or release trade

17   secrets." *Id*. (quoting *Nixon v. Warner Communs., Inc*., 435 U.S. 589, 598 (1978)).  However,

18   "'good cause' suffices to warrant preserving the secrecy of sealed discovery material attached to

19   nondispositive motions."  *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1135 (9th Cir.

20   2003) (citing *Phillips*, 307 F.3d at 1213).  Although the parties have pointed the court to no Ninth

21   Circuit case discussing what standard applies to the unsealing of complaints in *qui tam* actions, at

22   least one court in this district has applied the good cause standard in deciding whether to seal the

23   deposition testimony of a potential *qui tam* relator.  *See In re Uehling*, No. 1:13–mc–00022–

24   BAM, 2014 WL 2506150, at *3 (E.D. Cal. May 30, 2014); *see also Am. Civil Liberties Union v.*

25   *Holder*, 673 F.3d 245, 254 (4th Cir. 2011) (stating that when party seeks access to applications,

26   the "good cause" standard for sealing in § 3730(b)(3) "is the same standard contained in Rule 26

27   of the Federal Rules of Civil Procedure, which permits a federal court to require that certain

28   /////

4

1    matters be sealed); *United States ex rel. Gale v. Omnicare, Inc*., No. 1:10–cv–127, 2013 WL

2    3717755, at *1-2 (N.D. Ohio July 12, 2013) (applying good cause standard).

3              Under Rule 26(c), "the party asserting good cause bears the burden, for each

4    particular document it seeks to protect, of showing that specific prejudice or harm will result if no

5    protective order is granted." *Foltz*, 331 F.3d at 1130.  "'Where a business is the party seeking

6    protection, it will have to show that disclosure would cause significant harm to its competitive

7    and financial position.  That showing requires specific demonstrations of fact, supported where

8    possible, by affidavits and concrete examples, rather than broad, conclusory allegations of

9    harm.'"  *Contratto v. Ethicon, Inc*., 227 F.R.D. 304, 307-08 (N.D. Cal. 2005) (quoting *Deford* v.

10   *Schmid Prods. Co*., 120 F.R.D. 648, 653 (D. Md. 1987).  Only if the party seeking protection

11   makes an initial showing of harm from disclosure will the court balance the interests to decide

12   whether to issue a protective order.  *Phillips*, 307 F.3d at 1211.

13             A.  Biotronik's Motion

14             Biotronik argues unsealing the complaint will harm its reputation and business and

15   reveal trade secrets and confidential business information.   The government opposes, arguing

16   that earlier press coverage has already reported similar allegations and information about

17   recruiting of and payment to physicians is not unique information.

18             Although the parties agree that patient health information in Exhibit Four should

19   be sealed, they agree on little else.  The government argues the sealing provisions of the False

20   Claims Act are designed only to protect the government. *See, e.g., United States ex rel. Summers*

21   *v. LHC Grp., Inc*., 623 F.3d 287, 92 (6th Cir. 2010) ("[T]he primary purpose of the under-seal

22   requirement is to permit the Government sufficient time in which it may ascertain the status quo

23   and come to a decision as to whether it will intervene in the case filed by the relator."); *Lujan*,

24   67 F.3d at 245 (stating the sealing provisions of the False Claims Act were designed to encourage

25   more private false claims litigation while giving the government time to evaluate whether to

26   intervene or pursue criminal investigation); S. Rep. No. 3345, 99th Cong., 2d Sess. 24, *reprinted*

27   *in* 1986 U.S.C.C.A.N. 5266 at 5289, 1986 WL 31937, at *24 ("Keeping the *qui tam* complaint

28   under seal for the initial 60-day time period is intended to allow the Government an adequate

1   opportunity to fully evaluate the private enforcement suit and determine both if that suit involves

2   matters the Government is already investigating and whether it is in the Government's interest to

3   intervene and take over the civil action.").

4          At hearing, Biotronik acknowledged case law is sparse on the question of a

5   permanent seal for a *qui tam* action.  It did cite to the legislative history of certain 2008

6   amendments to the False Claims Act, which said the purpose of the sealing provisions "was two-

7   fold:  to provide the Department of Justice an opportunity to decide if the case was meritorious

8   and worthy of the Department taking over the case, and to protect the defendant from unfounded

9   accusations."  S. Rep. No. 507, 110th Cong., 2d Sess., 2008 WL 4415147, at *4.  The court

10   acknowledges this language, but notes it was part of a lengthy analysis of the history of the False

11   Claims Act, provided as background for amendments that had nothing to do with the sealing

12   provisions.  This court does not read this language as adding an additional reason for sealing and

13   has found no decision so interpreting the language.  The court thus follows those cases finding the

14   Act's sealing provisions were designed to protect the government's decision-making process.

15          1.   Reputation

16          Biotronik argues the complaint contains false information that it provided kick-

17   backs and bribes to named physicians, with the potential to harm its reputation and the reputations

18   of the named physicians and of some named Biotronik employees.  At hearing, Western Medical

19   joined in this argument, asserting it will be smeared by the allegations of its wrongdoing in the

20   unsealed complaint.

21          As the government points out, however, information about Biotronik's alleged

22   practices and its connection with Western Medical was published in *The New York Times* in 2011,

23   and additional information about Biotronik's practices was published in the *Portland Oregonian*

24   in 2013 and about a suit in New Mexico in *Courthouse News Service* in 2011.  *See* ECF 82 at 3-4.

25          Western Medical has not provided any information about the impact of the earlier

26   publicity on its reputation and business.  Biotronik does say that after the articles about it

27   appeared, several doctors have declined to begin or continue as consultants while others have

28   decided not to participate in clinical studies; some hospitals have decided not to purchase

6

1   Biotronik's devices while the Justice Department's investigation was pending.  Brumbaugh Decl.,

2   ECF No. 76-2 ¶ 10.

3               "Simply showing that public access would harm the company's reputation is

4   generally not sufficient to justify sealing a court record."  *In re Perrigo Co*., 128 F.3d 430, 448

5   (6th Cir. 1997); *see also Doe v. Univ. of Montana*, No. CV 12-77-M-DLC, 2012 WL 2416481, at

6   *3 (D. Mont. Jun. 26, 2012) (stating that potential harm to the reputation of university personnel

7   "is an insufficient legal basis to justify sealing in this case").

8               Biotronik has provided some evidence of harm from the earlier publicity, but after

9   balancing the public interest against its reasons for secrecy, the court finds Biotronik has not

10  established good cause for sealing.  Biotronik argues the court should be guided by *United States*

11  *v. Mathur*, which said sealing is appropriate when disclosure might result in a third party's

12  embarrassment.  No. 2:11-cr-00312-MMD-PAL, 2012 WL 3135548, at *2 (D. Nev. June 8,

13  2012), *recommendation adopted* 2012 WL 3135532.  That case is of little assistance, however, as

14  it refers only generally to salacious details about third parties.  Here the information about the

15  doctors does not rise to that level.

16              The court in *Mathur* did recognize that sealing is not justified when the revelations

17  might lead to the litigant's "embarrassment, incrimination, or exposure to further litigation."  *Id*.

18  (citation & quotation marks omitted).  According to Brumbaugh's declaration, most of the impact

19  on Biotronik's business was the result of the Justice Department's investigation rather than the

20  publicity itself, so it is not clear unsealing the complaint will have an additional effect on

21  Biotronik's business.  Moreover, the unsealed action will make clear the government's limited

22  participation in the case, which the relator has dismissed.  *See United States v. Iss Marine Servs.,*

23  *Inc*., 905 F. Supp. 2d 121, 141-42 (D.D.C. 2012) (declining to seal an administrative subpoena

24  because the Government's investigation of the company was public knowledge).  This

25  consideration provides little heft to Biotronik's  request for continued secrecy.

26              In these circumstances, the public's right of access to court documents outweighs

27  Biotronik's interest in keeping the complaint sealed.

28  /////

7

1       Western Medical has provided no evidence of the impact of prior publicity on its

2   business and so also has not carried its burden of showing harm.

3       2.  Trade Secrets and Confidential Business Information

4       Biotronik also contends the complaint contains confidential business information

5   and trade secrets.  It says paragraphs 93 and 94 contain information about an internal

6   implementation guide and a PowerPoint presentation; paragraphs 96-99 include information

7   about its methods for conducting clinical studies; paragraphs 86-88 describe its training methods

8   for representatives and how it selects physicians who conduct the training; paragraphs 77-82 and

9   89 outline its relationship with other physicians; and paragraph108 describes its relationship with

10  a hospital.  Decl. of Jon Brumbaugh, ECF No. 76-2 ¶¶ 5-8.

11      Brumbaugh, Biotronik's Vice President of Regulatory and Compliance, avers that

12  the complaint contains false statements about clinical trials, which, if made public, will make it

13  difficult to recruit doctors to participate in the studies.  ECF No. 76-2 ¶ 6.  He also asserts the

14  complaint's discussion of Biotronik's use of physicians to train its representatives, who are

15  present during surgery and who program the implanted device, will allow competitors to structure

16  their training to eliminate any competitive advantage and will give competitors insights into

17  Biotronik's selection of trainers.  *Id*.  Brumbaugh says the complaint describes Biotronik's

18  relationship with the physician consultants who provide feedback and says this information gives

19  its competitors insight into the physicians qualified to and interested in assisting Biotronik.  *Id*.

20  ¶ 9.  He adds that Biotronik takes pains to protect the confidentiality of the information by having

21  physicians and employees execute confidentiality agreements and because of the competitive

22  nature of the industry, the companies "take as much care as possible to protect the confidentiality

23  of information related to their products, customers, marketing and sales practices, consulting

24  relationships and clinical studies."  *Id*. ¶¶ 4, 11.

25      "A 'trade secret may consist of a formula, pattern, device or compilation of

26  information which is used in one's business, and which gives him an opportunity to obtain an

27  advantage over competitors who do not know it or use it.'"  *In re Electronic Arts, Inc*.,

28  /////

8

1   298 F. App'x 568, 569 (9th Cir. 2008) (unpublished) (quoting *Restatement of Torts* § 757,

2   cmt. b).

3          Upon review, the court found that the Third Amended Complaint does not provide

4   any information about how Biotronik selects physicians to conduct training, other than by

5   offering them money, or how the training is actually conducted.   Similarly the complaint does

6   not describe how it conducts clinical trials,  other than by offering physicians money for enrolling

7   participants, nor does it describe the relationship between Biotronik and one hospital apart from

8   allegations that Biotronik's employees offered employment to hospital employees in exchange for

9   information.   Moreover, even though paragraph 93 mentions the implementation guide and

10  quotes a few passages, and paragraph 94 mentions the "fellows" program, there is little

11  information describing Biotronik's methods rather than its monetary goals.  Paragraphs 96

12  through 99 provide little insight on Biotronik's recruiting for doctors to participate in their

13  clinical trials, apart from the monetary incentive.  Other than the actual payments alleged in

14  paragraph 96, this material is not a trade secret.  Similarly, the information about payments to

15  physicians to train other physicians in paragraphs 86 through 88 exposes nothing about the

16  content of any presentations or anything about the selection process apart from the fact that

17  Biotronik selected physicians as trainers simply as part of its marketing campaign.  Once again,

18  however, the amounts paid to the trainers should be redacted.  Finally, paragraphs 77 through 82

19  contain information about Biotronik's consulting agreements with physicians.  The court agrees

20  that the bullet points in paragraphs 78 and 79, identifying specific terms of certain agreements

21  and services provided by advisors, as well as the consulting fees should be redacted.

22          B.  The Government's Request

23          The government has submitted a stipulation requesting the seal be maintained over

24  its many requests for extensions of time.  ECF No. 77.  The government justifies its request by

25  saying the requests "tell the story of the Government's investigation" and would give defendants

26  insight into its strategic and tactical approach to False Claims Act cases.  *Id*. at 4.

27          In *Mikes v. Straus*, the court said that maintaining the seal on the government's

28  filings was appropriate when "disclosure of confidential investigative techniques, of information

9

1  which could jeopardize an ongoing investigation, or of matters which could injure non-parties is

2  requested." 846 F. Supp. 21, 23 (S.D.N.Y. 1994); *accord United States ex rel. Health Outcomes*

3  *Techs. v. Hallmark Health Sys., Inc*., 349 F. Supp. 2d 170, 173 (D. Mass. 2004).

4         On the other hand, a court may unseal documents if they describe only "routine

5  investigative procedures which anyone with rudimentary knowledge of investigative processes

6  would assume would be utilized in the regular course of business. . . [and] contain[ ] no

7  information about specific [investigatory] techniques . . . ." *Mikes*, 846 F. Supp. at 23; *see also*

8  *United States ex rel. Rostholder v. Omnicare, Inc*., 799 F. Supp. 2d 547, 549 (D. Md. 2011)

9  (denying request to maintain seal on government requests when they did "not contain confidential

10  investigative techniques or substantive details regarding the government's methods of

11  investigation that could jeopardize  . . . future cases").

12         The court has examined the government's requests filed in this case and concludes

13  that with the exception of the supplemental declaration filed March 6, 2014, they identify only

14  "routine investigative procedures," such as gathering documents, interviewing witnesses, and

15  consulting with counterparts in the District of Nevada regarding a possible criminal investigation.

16  At hearing, the government suggested the information about the Nevada investigation should be

17  sealed, but has not proffered anything suggesting that making this information public will

18  jeopardize an ongoing investigation.

19         Not until its March 2014 supplemental request does the government do more than

20  say its agents have interviewed some physicians and consulted some records.  In that document it

21  lists, by title, the people it still hopes to depose and outlines settlement efforts.  Except for the list

22  of people it hopes to depose, the additional detail only fleshes out the routine investigative

23  techniques the government described in its earlier applications.  Accordingly, the government's

24  extension requests will be unsealed, but paragraph 4 iii of the Supplemental Declaration filed

25  March 6, 2014, may be redacted.

26  /////

27  /////

28  /////

IT IS THEREFORE ORDERED that:

1.  Biotronik's motion to seal the complaint, ECF No. 76, is denied, but the court grants its request to redact the payment figures in paragraphs 96, 86, 88, 78, 79 and 81 as well as the bullet points in paragraphs 78 and 79;

2.  The government's request to maintain its extension requests under seal is denied, but the court grants its request to redact paragraph 4 iii of the Supplemental Declaration, ECF No. 57, filed March 6, 2014;

3.  Relator is directed to work with Biotronik to file a redacted complaint within fourteen days of the date of this order;

4.  The government is directed to file its redacted Supplemental Declaration within fourteen days of the date of this order;

5.  Upon the filing of the redacted documents, this case will be unsealed.

DATED:  August 19, 2014.

_____

UNITED STATES DISTRICT JUDGE